No. 79-94

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

ANDREW J. STENBERG,

Plaintiff and Appellant,

vs.

TODD WILLIAM NEEL,

Defendant and Respondent.

---

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula.
Honorable John Henson, Judge presiding.

Counsel of Record:

For Appellant:

Goldman and Goldman, Missoula, Montana
Jon Oldenburg argued, Missoula, Montana

For Respondent:

Garlington, Lohn and Robinson, Missoula, Montana
Candace Fetcher argued and Gary Graham argued,
Missoula, Montana

---

Submitted: May 29, 1980

Decided: July 14, 1980 JUL 14 1980

Filed: JUL 14 1980

Thomas J. Kearney
_____ Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff brought this action to recover damages for personal injuries sustained in an automobile accident. Plaintiff appeals from a judgment on jury verdict and the denial of a motion for a new trial.

This action arose out of an April 14, 1975, traffic accident at the intersection of North Orange Street and West Broadway in Missoula, Montana. Stenberg, the plaintiff and appellant, was a policeman operating a police patrol car at the time of the accident.

Prior to the accident Stenberg had been writing a parking ticket at a location south of where the collision occurred. At that time he received a call informing him of a disturbance at a local secondhand store. During trial the plaintiff described what happened next, as follows:

> "When I received the call, I left the area of
> Second and Hickory and I turned on my pursuit
> lights and my overhead lights and my siren. I
> turned northbound on Orange Street off of Second
> Street and proceeded across the bridge. The
> traffic was quite heavy during the lunch hour and
> I was pretty much in the flow of traffic going
> across the bridge. I got to the north end of the
> Orange Street bridge and the traffic was heavy
> at all the intersections and on the streets, so I
> had to go on across the centerline to get into
> the intersection. I entered the intersection, the
> light was red but all the vehicles were stopped. I
> got about half-way through the next block, traffic
> was stopped at the intersection and again I had
> to go to the left because of the cars that were
> stopped. At the intersection I entered the inter-
> section and that's when I was involved in the
> accident."

Neel, the defendant, was driving his automobile east on Broadway when the accident occurred. He had the green light in his favor. His testimony indicates that he did not hear the siren or see the emergency lights on the patrol car. Other eyewitnesses gave conflicting testimony as to the

-2-

audibility and visibility of the patrol car's emergency equipment. As the Neel automobile entered the intersection it was hit midway on the passenger side by the front of the patrol car. As a result of the accident Stenberg suffered a pinched nerve in the neck. This has resulted in severe, incapacitating, intermittent pain.

Stenberg brought this suit to recover his damages arising from the accident. The jury returned a verdict in defendant's favor.

Stenberg raises four issues on appeal:

1. Whether the District Court erred in instructing the jury on the standard of care applicable to the plaintiff?

2. Whether the District Court erred in instructing the jury to apply the law of contributory negligence rather than the law of comparative negligence?

3. Whether the District Court erred in refusing to give two of plaintiff's proposed instructions?

4. Whether the District Court erred in not granting the plaintiff's motion for a new trial?

Stenberg contends that the trial court erred by giving court's instruction no. 15 which instructed the jury as to standard of care applicable to both parties. This instruction reads:

> "The legal standard of care governing the conduct of motor vehicle operators is unvarying, and rests alike upon all drivers at all times. The standard of care is the conduct of an ordinarily prudent person in the same or similar circumstances; in other words, ordinary care. Ordinary care, as the term is used in these instructions means that degree of care which a reasonable prudent person would use or exercise under the same or similar circumstances, in relation to the same or similar matters to avoid injury, and it implies the use of such care as is fairly commensurate with the danger to be avoided when measured by the standards of common prudence and experience.

"And, generally speaking, negligence is, therefore, the want of ordinary care, the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or the doing what such a person under the existing circumstances would not have done.

"Negligence may also consist in the doing of some act which the law forbids, or in the failure to do that which the law commands.

"In this action any negligence is of no consequence unless it was a proximate cause of the injuries and damages complained by the plaintiff." (Emphasis added.)

Stenberg contends that the instruction was incorrect, because of certain language which appears in section 61-8-107, MCA. This statute grants certain privileges to the operators of authorized emergency vehicles. Section 61-8-107, MCA, was set forth in substantial part in the court's instruction no. 16. The instruction reads in part:

"(b) The driver of an authorized emergency vehicle may:

"1. Park or stand, irrespective of the provisions of this act;

"2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

"3. Exceed the speed limits so long as he does not endanger life or property;

"4. Disregard regulations governing direction of movement or turning in specified directions.

"(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals meeting the requirements of §32-21-132, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

"(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others." (Emphasis added.)

Stenberg contends that the statute relieves the driver of an authorized emergency vehicle from the duty of exercising

-4-

ordinary care, and, instead, imposes a lesser duty. Therefore, Stenberg argues, instruction no. 15 constituted reversible error, because it imposes a duty of ordinary care upon both parties.

Section 61-8-107, MCA, has not been construed by this Court. Other jurisdictions have, however, had occasion to construe and apply nearly identical statutes. Schatz v. Cutler (D. Vt 1975), 395 F.Supp. 271. Shawnee T.P. Fire Dist. No. 1 v. Morgan (1977), 221 Kan. 271, 559 P.2d 1141.

In Shawnee the court was faced with a factual situation very much like that presented by the instant case. The court had to determine the duty imposed by a Kansas statute which is identical to section 61-8-107(4), MCA, in all material respects. The court said:

> "Even though the use of the word 'reckless' suggests an element of wantonness, we believe it was the intent of the legislature to charge the driver of an emergency vehicle with due care under the existing facts and circumstances. The facts and circumstances include the privileges and immunities granted by statute. The test for due care (or due regard as used in the statute), as applied to the driver of an emergency vehicle, is whether with the privileges and immunities provided by statute he acted as a reasonably careful driver." 559 P.2d at 1147. (Emphasis added.)

We agree. The driver of an authorized emergency vehicle is charged with a duty of due care under the circumstances, and the circumstances include the privileges granted by section 61-8-107(2), MCA. In the present case, instruction no. 15 stated, in essence, that all drivers must use ordinary care under the circumstances. Instruction no. 16 gave the privileges provided to Stenberg under the terms of section 61-8-107. Consequently, the instructions correctly presented the law to the jury. The statute may well have been intended to protect the driver of an emergency vehicle, but it does

-5-

not relieve him of exercising ordinary care. No error was committed by giving instruction no. 15.

Stenberg next contends that the District Court erred in instructing the jury to apply the law of contributory negligence rather than the law of comparative negligence.

Section 27-1-702, MCA, sets forth Montana's law of comparative negligence. The effective date of this statute was July 1, 1975, although it was passed by the legislature on March 17, 1975. Section 1-2-201(1), MCA, provides that "Every statute, unless a different time is prescribed therein, takes effect on the first day of July following its passage and approval." A different time is not prescribed by section 27-1-702, MCA.

In Dunham v. Southside National Bank of Missoula (1976), 169 Mont. 466, 548 P.2d 1388 [1383], this Court affirmed a District Court's grant of summary judgment in defendant's favor. The holding was based on the defendant's lack of duty to the plaintiff. This Court went on, however, to consider whether the new comparative negligence statute was to be retroactively applied. This Court said:

> "The order of the district court granting summary judgment is affirmed, as is the district court's conclusion that the Montana comparative negligence law Section 58-607.1, R.C.M. 1947 [now §27-1-702, MCA], shall not apply to a cause of action arising prior to July 1, 1975." 169 Mont. at 475-76. (Emphasis added.)

These observations from the Dunham case control the present case. The District Court did not err in instructing the jury to apply the law of contributory negligence rather than the law of comparative negligence.

Stenberg next contends that the trial court erred in refusing to grant plaintiff's proposed instruction no. 12. This instruction read, "You are instructed that when interpreting

-6-

statutes particular expressions qualify those which are general." This was taken from section 1-3-225, MCA. According to plaintiff's contention, the instruction was necessary in order that the jury could properly interpret the court's instructions no. 16 and no. 18, which were both taken from two other Montana statutes.

Section 26-1-201, MCA, states that all questions of law, including the construction of statutes, are to be decided by the court. Section 26-1-202, MCA, states that questions of fact are to be decided by the jury, where the trial is by jury. Consequently, it was not the jury's function to interpret any statutes, and it was not error to refuse plaintiff's proposed instruction no. 12.

Stenberg also contends that the trial court erred in refusing to grant plaintiff's proposed instruction no. 22. This proposed instruction stated:

> "You are instructed if you find for the Plaintiff on the question of liability you may then consider what damages, if any, the Plaintiff has sustained in relation to the enjoyment of hobbies; to what extent, if any his said injuries disabled the Plaintiff and prevented him from engaging in his usual hobbies such as fishing, playing baseball, hunting, and any other recreational activities."
> (Emphasis added.)

The failure to give this instruction does not constitute reversible error. "Reversible error is error materially affecting the substantial rights of the aggrieved party. Rule 14, M.R.App.Civ.P." Ehni v. N.P. and White Pine Co. (1969), 152 Mont. 373, 381, 450 P.2d 882. In the present case the jury found in favor of the defendant. The jury did not reach the issue of damages. Consequently, no reversible error can be predicated on damage instructions.

Stenberg's final contention is that the District Court erred in denying his motion for a new trial. In addition to

the issues which have been discussed above, Stenberg alleged in his motion for new trial that there was insufficient evidence to support a determination by the jury that he was contributorily negligent.

Rule 59, M.R.Civ.P. permits the trial judge to order a new trial pursuant to motion. This is a matter within the trial court's discretion if there is an insufficiency of evidence to support a jury verdict. Campeau v. Lewis (1965), 144 Mont. 543, 547, 398 P.2d 960. However, a new trial may not be granted by the trial court when there is substantial evidence to support the verdict. "The court's discretion is exhausted when it finds substantial evidence in the record to support the verdict." Hinton v. Peterson (1946), 118 Mont. 574, 578, 169 P.2d 333.

In the present case, various witnesses estimated that Stenberg's speed immediately prior to the accident was between 25 miles per hour and 50 miles per hour. There is no dispute that the intersection was busy, that Stenberg had to drive the police car across the centerline to get into the intersection, and that Stenberg entered the intersection against a red light. While these actions are authorized for drivers of authorized emergency vehicles by section 61-8-107, MCA, Stenberg was still required to exercise ". . . due regard for the safety of all persons . . ." There was sufficient evidence from which a jury could find that Stenberg failed to exercise the required standard of care. The trial court did not abuse its discretion in denying the motion for a new trial.

Affirmed.

_____
Chief Justice

-8-

We Concur:

------------------------------------
*John Conway Harrison*

------------------------------------
*Daniel J. Shea*

------------------------------------
*John C. Sheehy*
                    Justices