
DA 09-0508

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 96

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

PATRICK DEAN BROWNBACK,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 08-109
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Charles E. Petaja, Attorney at Law; Helena, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; Tammy K Plubell, Assistant Attorney General; Helena, Montana

          Leo Gallagher, Lewis and Clark County Attorney; Helena, Montana

          Submitted on Briefs:  April 8, 2010

                  Decided:  May 4, 2010

Filed:

      _____
                    Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Defendant Patrick Brownback pled guilty to theft by common scheme for receiving forged checks from his mother. The District Court of the First Judicial District, Lewis and Clark County, sentenced Brownback. Brownback now appeals the portion of his sentence requiring him to pay $739,312 in restitution to the State of Montana. We affirm.

¶2    We address the following issues on appeal:

¶3    *1. Whether the District Court erred in requiring Brownback to pay restitution to the State for money embezzled by his mother and paid over to him.*

¶4    *2. Whether the District Court erred in requiring Brownback to pay restitution without considering his ability to pay.*

¶5    *3. Whether the District Court's restitution hearing violated Brownback's rights to assert civil defenses and to fundamental fairness.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶6    In March 2008 the State filed an information charging Brownback with felony forgery by common scheme for delivering checks that he knew had been forged by his mother, Susan Campbell (Susan).

¶7    In 2001 Susan, then an accountant and office manager for the Montana Department of Administration, began writing unauthorized checks to Brownback from the account of her husband, Jack Campbell (Jack), and the account of Jack's business, Jack's Technical Assistance (JTA). Susan would forge her husband's signature on the

2

checks. Brownback knew that the checks were forged and unauthorized. In 2002 Susan began embezzling money from the State by issuing checks from the State to JTA. Over the next five years, Susan embezzled $739,312 from the State.

¶8 Susan funneled all the money she stole from JTA and the State to Brownback, who had financial problems due to a gambling addiction. Susan said she did this out of motherly concern for her son. According to Susan, Brownback would come to her with "desperate plea[s] for help" (i.e., money), insisting that "he would go to jail, lose his home, his family, etc." Susan stated that this amounted to emotional blackmail. Nevertheless, Susan continued to write checks to Brownback, drawing on Jack's and JTA's accounts.

¶9 Brownback took the checks for his personal use and to support his addiction. He admitted knowing that Susan had no authority to sign the checks. Even though Susan deposited the money she embezzled from the State into JTA's account and from there passed it on to Brownback, both she and Brownback deny that Brownback knew that the money was embezzled from the State.

¶10 In 2007 investigators discovered Susan's theft. She was prosecuted in federal court. Ultimately Susan pled guilty to scheming to defraud the State of Montana, and committing aggravated identity theft and income tax evasion. The court sentenced her to seventy-five months in prison and ordered her to pay approximately $1 million in restitution, including $739,312 to the State of Montana (and its insurer).

3

¶11 The investigation into Susan's embezzlement led to the charges against Brownback. Eventually Brownback and the State reached a plea agreement. Pursuant to this agreement, Brownback pled guilty to theft by common scheme for exercising "unauthorized control over monies belonging to his step-father, Jack Campbell, d/b/a Jack['s] Technical Assistance." Brownback admitted that this conduct occurred continuously from 2001 to 2007. However, Brownback also specifically denied knowing that any of the money had been embezzled from the State and denied participating in the embezzlement.

¶12 The District Court accepted Brownback's guilty plea and set a sentencing hearing. Brownback filed a sentencing memorandum, arguing among other things that he should not be required to pay restitution to the State for the $739,312 that Susan embezzled. At the close of business on the Friday before sentencing, the State filed its sentencing memorandum, responding that the State was a victim of Brownback's crime and, consequently, was entitled to restitution from him for the $739,312 that Susan embezzled and funneled to him.

¶13 Both the State and Brownback presented testimony and evidence at the sentencing hearing. The principal dispute between the parties at the hearing was whether Brownback should be required to pay restitution to the State. On three occasions, Brownback, through counsel, informed the District Court that he had only received the State's sentencing memorandum at the end of the day on the preceding Friday. In

4

response, the District Court asked Brownback if he wanted to continue the sentencing hearing. Brownback declined.

¶14 Following the hearing, the District Court issued its judgment, sentencing Brownback to the Montana Department of Corrections (DOC) for ten years with five suspended, subject to various conditions. The District Court also ordered Brownback to pay nearly $1 million in restitution, including $739,312 to the State (which Brownback now challenges). In setting restitution, the District Court did not consider Brownback's ability to pay.

¶15 Brownback appeals.

## STANDARD OF REVIEW

¶16 We review a sentence that includes at least one year of incarceration or, as here, commitment to DOC for legality only. *State v. Perkins*, 2009 MT 150, ¶ 8, 350 Mont. 387, 208 P.3d 386; *State ex rel. Holt v. District Court*, 2000 MT 142, ¶¶ 6, 10, 300 Mont. 35, 3 P.3d 608; *see also* § 46-18-903(1), MCA. In conducting such review, we consider whether "the sentencing court had statutory authority to impose the sentence, whether the sentence falls within the parameters set by the applicable statute, and whether the court followed the affirmative mandates of the sentencing statute." *Perkins*, ¶ 8.

## DISCUSSION

¶17 *1. Whether the District Court erred in requiring Brownback to pay restitution to the State for money embezzled by his mother and paid over to him.*

¶18 Brownback challenges the District Court's order requiring him to pay restitution to the State for the money that Susan embezzled and eventually passed on to him.

5

Brownback first contends that he should not be responsible for restitution to the State for this money because he neither knew about nor participated in the embezzlement.

¶19　When a criminal defendant, as here, pleads guilty to a criminal offense, the sentencing court must impose restitution if the offender's criminal conduct resulted in pecuniary loss to a victim. Sections 46-18-201(5), -241(1), -243(1), (2), MCA. Restitution "engraft[s] a civil remedy onto a criminal statute," creating a procedural shortcut for crime victims who would be entitled to a civil recovery against the offender. *United States v. Martin*, 195 F.3d 961, 968 (7th Cir. 1999) (interpreting similar federal restitution statute, 18 U.S.C. § 3663A); *see also* § 46-18-249(1), (3), MCA (providing that restitution award does not limit victim's right to recover damages in subsequent civil suit, but that restitution must offset any civil award for same pecuniary loss).

¶20　The required restitution must be full, yet it is limited to special damages that the victim could recover from the offender in a civil action. *See* § 46-18-243(1) (defining "pecuniary loss"). Victims entitled to restitution include persons or governmental entities that suffer loss of property "as a result of" the offender's criminal conduct. *Id.* at § 46-18-243(2)(a)(i), (iii). Thus, a causal relation between the offender's criminal conduct and the pecuniary loss is the touchstone for determining whether a person or entity is a victim entitled to restitution. *State v. Breeding*, 2008 MT 162, ¶ 13, 343 Mont. 323, 184 P.3d 313 (noting "causal standard").[1]

---

[1] We have recognized that some pecuniary losses may be so attenuated as to no longer be considered "a result of the offense." *State v. Ness*, 2009 MT 300, ¶ 20, 352 Mont. 317, 216 P.3d 773 (quoting *State v. LaTray*, 2000 MT 262, ¶ 14, 302 Mont. 11, 11 P.3d 116); *see also State v.*

¶21 Here, Brownback does not specifically deny that the State suffered pecuniary loss for which it could recover special damages in a civil action against Brownback. Nor does He specifically deny the causal relation between his criminal conduct and the State's loss. Instead, Brownback asserts that he should not be required to pay restitution to the State because (1) he did not know about and (2) he did not participate in Susan's embezzlement. These arguments miss the mark.

¶22 Contrary to Brownback's suggestion, there is no statutory requirement that a defendant must know about a specific loss caused by his criminal conduct before it can be the basis of an order for restitution. In fact, our case law suggests just the opposite: that a criminal defendant may be responsible for restitution for pecuniary loss that he did not know about at the time of the criminal offense, but which resulted therefrom. *See State v. Perkins*, 2009 MT 150, ¶¶ 6-7, 9-13, 350 Mont. 387, 208 P.3d 386 (affirming restitution for child-care expenses incurred by third party after defendant assaulted minor, leading to removal of minor child from custody of mother and placement of child in care of third party); *LaTray*, ¶¶ 6-7, 22 (affirming restitution to towing and ambulance services called by police after defendant drunk driver rolled his car and injured himself).

¶23 Similarly, the fact that Brownback did not participate in Susan's embezzlement does not preclude an order of restitution. Restitution is not limited to only those victims

---

*Morgan*, 198 Mont. 391, 401, 646 P.2d 1177, 1183 (1982) (recognizing disagreements about limits of a "pure" causal standard). Other courts have also recognized the problem of requiring restitution for attenuated harms. *E.g. Minnesota v. Palubicki*, 727 N.W.2d 662, 667 (Minn. 2007); *Washington v. Enstone*, 974 P.2d 828, 830-31 (Wash. 1999); *Colorado v. Deadmond*, 683 P.2d 763, 773-74 (Colo. 1984) (citing *Morgan*); *Utah v. Johnson*, 224 P.3d 720, 732 (Utah. App. 2009).

who suffer pecuniary loss as a direct result of a criminal offense. *See LaTray*, ¶ 14. As stated above, restitution turns on the familiar elements of loss and causation. Here, there is no question that the State suffered pecuniary loss "arising out of the facts or events constituting" Brownback's criminal activities. Section 46-18-243(1)(a). And, although Brownback did not participate in the embezzlement, there was a causal relation between his criminal offense and the State's pecuniary loss. Brownback pled guilty to theft by common scheme for a continuing course of conduct that spanned more than six years. Brownback's continuing criminal conduct consisted of manipulating his mother, Susan, into writing him unauthorized checks drawn from the accounts of her husband, Jack, and Jack's business, JTA. According to Susan, it was because of Brownback's "desperate plea[s] for help" that she began embezzling money from the State and funneling it from the JTA account to Brownback. The evidence and testimony presented at the sentencing hearing showed that all of the $739,312 that Susan embezzled from the State went, ultimately, to Brownback. Given this record, we conclude that but for Brownback's continuing course of criminal conduct, the State would not have lost $739,312. This satisfies the causation standard of § 46-18-243(2)(a), MCA. Therefore, because the State was a victim that suffered pecuniary loss, it was entitled to full restitution.

¶24 *Breeding*, cited by Brownback, does not compel a different conclusion. In that case, the defendant's friend stole a car and drove it to pick up the defendant. *Breeding*, ¶ 2. At first the defendant, Breeding, did not know that the car was stolen because his friend told him that the car belonged to his uncle. *Id*. at ¶ 18. With Breeding and another

character as passengers, the friend drove the car into a haystack, damaging the car. *Id.* at ¶ 3. The friend subsequently revealed that the car was stolen, and he and Breeding decided to drive the car to California. *Id.* They were arrested *en route*, and Breeding eventually pled guilty to felony theft. *Id.* at ¶¶ 3-4. The district court ordered Breeding to pay restitution for the damage to the car, and Breeding appealed. *Id.* at ¶¶ 8-9. We held that the district court erred in requiring Breeding to pay restitution for the damage to the car. *Id.* at ¶ 20. We applied the rule that an offender is responsible for restitution for harm caused by his offense. *Id.* at ¶ 13. It was only after the car was damaged that Breeding discovered it had been stolen and drove to California *Id.* at ¶¶ 15-17. Consequently, there could be no causal connection between Breeding's offense and the earlier damage to the car—and, therefore, "no basis for requiring Breeding to pay restitution for that damage." *Id.* at ¶ 18.

¶25 Unlike *Breeding*, here the harm for which Brownback was required to pay restitution first occurred in 2002, one year after he began knowingly to receive forged checks from his mother. As mentioned above, testimony and evidence presented at the sentencing hearing demonstrated a causal connection between Brownback's ongoing criminal conduct and the State's loss. It matters not that Brownback was unaware the money he received from Susan originated in the State's coffers. Nor is it relevant that Brownback might not have taken the money had he known it was embezzled from the State. The question is about causation, not counterfactual scenarios. In *Breeding*, the defendant's lack of knowledge that the car was stolen—at the time the car was

9

damaged—negated the required mental state for theft ("purposely or knowingly"). *Id.* at ¶ 17; *see also* Wayne R. LaFave, *Substantive Criminal Law* vol. 1, § 5.6(a), 395 (2d ed., Thompson West 2003) ("[I]gnorance or mistake of fact or law is a defense when it negatives the existence of a mental state essential to the crime charged."). As Breeding only met all the elements of theft after his friend had damaged the car, his criminal conduct could not have *caused* the damage (causation does not operate retrospectively). *Breeding*, ¶ 18. In contrast to *Breeding*, Brownback's ignorance that the money he was receiving originally belonged to the State does not negate the required mental state for theft. He knew all along that he was obtaining "unauthorized control over property of the owner"—he just thought he was taking money from his step-father, not the State. Section 45-6-301(1), MCA. This is no defense: it is no less theft because the victim's name is unknown. One may not steal property from strangers with impunity. Thus, Brownback's mistake as to the identity of the source of the money he stole did not affect the causal relation.

¶26   *2. Whether the District Court erred in requiring Brownback to pay restitution without considering his ability to pay.*

¶27   The District Court required Brownback to pay restitution without considering his financial means. Brownback avers that this was error. We disagree.

¶28   The principal authority on which Brownback premises his argument is § 46-18-101(3)(h), MCA, which reads: "Sentencing practices must emphasize restitution to the victim by the offender. A sentence must require an offender who is financially able to do so to pay restitution . . . ." This is a general principle of the State's correctional and

10

sentencing policy. While the specific restitution statutes formerly required sentencing courts to consider an offender's ability to pay, the legislature removed this requirement in 2003. 2003 Mont. Laws 940-41; *State v. McMaster*, 2008 MT 268, ¶ 45, 345 Mont. 172, 190 P.3d 302. Now district courts are expressly mandated to require offenders to pay full restitution. Sections 46-18-201(5), -241(1), MCA. "When a general and particular provision are inconsistent, the latter is paramount to the former, so a particular intent will control a general one that is inconsistent with it." Section 1-2-102, MCA. Accordingly, § 46-18-101(3)(h), MCA, does not trump the mandate for district courts to order full restitution. Thus, the District Court did not err in requiring Brownback to pay full restitution without considering his ability to pay.[2]

¶29    3. *Whether the District Court's restitution hearing violated Brownback's rights to assert civil defenses and to fundamental fairness.*

¶30    Last, Brownback directs us to the fact that the State filed its sentencing memorandum at the close of business on the Friday before the sentencing hearing, which was the following Monday. The State's sentencing memorandum asserted that the State was a victim entitled to restitution. Brownback argues that he did not have adequate time to assess the accuracy of the loss claimed by the State. This, Brownback submits, violated his right to present any civil defense under § 46-18-244(2), MCA, as well as fundamental fairness. Brownback asserts that the District Court should have continued

---

[2] The principle from § 46-18-101(3)(h), MCA, is not inconsistent with the amended restitution statutes. A district court may consider an offender's ability to pay restitution, but only in response to a subsequent petition to adjust or waive the ordered restitution. *See* § 46-18-246, MCA.

the sentencing hearing until the State completed its civil case against him. We reject this argument.

¶31 As we stated in *McMaster*, we will not allow a party "to decline the District Court's offers for additional time during the hearing and then argue on appeal that he had" inadequate time to prepare. *State v. McMaster*, 2008 MT 268, ¶ 43, 345 Mont. 172, 190 P.3d 302. This is precisely what happened here. At the sentencing hearing, Brownback repeatedly complained that the State had filed its brief at the end of the day on the preceding Friday. Consequently, the District Court asked Brownback if he wanted to continue the hearing. He declined. Had the District Court denied a request for a continuance by Brownback, we would consider the implications of § 46-18-244(2), MCA, and fundamental fairness as regards orders of restitution. *See e.g. South Dakota v. Tuttle*, 460 N.W.2d 157, 159-60 (S.D. 1990) (considering application of procedural due process to orders of restitution). That, however, is not the case before us.

¶32 For the foregoing reasons, we affirm the sentence of the District Court ordering Brownback to pay restitution to the State.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ JIM RICE

12