FILED

August 28 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0336

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 185

CITY OF WHITEFISH,

       Plaintiff and Appellee,

  v.

RALPH JENTILE,

       Defendant and Appellant.


APPEAL FROM:    District Court of the Eleventh Judicial District,
                  In and For the County of Flathead, Cause No. DC-10-407C
                  Honorable Stewart E. Stadler, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Wade M. Zolynski, Chief Appellate Defender, Sarah Chase Rosario,
          Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General, Mardell Ployhar, Assistant
          Attorney General, Helena, Montana

          Caleb Simpson, Whitefish City Prosecutor, Whitefish, Montana


                  Submitted on Briefs:  June 19, 2012

                            Decided:  August 28, 2012


Filed:

          _____
                      Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Ralph Jentile appeals a decision of the District Court for the Eleventh Judicial District, Flathead County, ordering Jentile to pay for the repairs to two Whitefish Police Department patrol cars that collided with each other while pursuing Jentile. We reverse and remand for further proceedings consistent with this Opinion.

¶2     Jentile raises two issues on appeal which we have restated as follows:

¶3     1. Whether the amount of restitution Jentile was ordered to pay should be reduced because of the alleged comparative negligence of the officer involved in the accident.

¶4     2. In the alternative, whether Jentile's trial counsel was ineffective for failing to specifically argue that the amount of restitution Jentile was ordered to pay should be reduced because of the alleged comparative negligence of the officer involved in the accident.

¶5     Because we conclude that the first issue is dispositive, we do not address the second issue.

## Factual and Procedural Background

¶6     On October 28, 2009, the Helena Veteran's Administration (the VA) contacted the Whitefish Police Department (the Police) regarding concerns the VA's medical staff had for Jentile who was one of the VA's clients. The VA medical staff reported that they were concerned that Jentile might be suffering from suicidal thoughts based on a phone inquiry Jentile had made regarding the lethality of lithium and the lack of an antidote.

¶7     In response to the VA's call, the Police twice attempted to locate Jentile at his Whitefish residence to conduct a welfare check, but he was not at home either time.

2

Consequently, Officer Ryan Zebro placed several calls to Jentile's cellular phone. In the first call, Jentile hung up on the officer. In the second call, Jentile explained to Officer Zebro that he was not suicidal. In the third call, Officer Zebro informed Jentile that the VA had ordered an evaluation for Jentile and that Jentile needed to turn himself in. Jentile told Officer Zebro that he was not suicidal, that he wanted to be left alone, and that he would not turn himself in. Jentile also threatened to retaliate if the police did not leave him alone. After the third phone call, Officer Zebro put out an "attempt to locate" for Jentile. A short time later, another officer responded that he had sighted Jentile's vehicle driving through town.

¶8 The Police used three patrol cars to stop Jentile. The first patrol car stopped traffic while the second patrol car pulled alongside Jentile, and the third patrol car pulled in behind him. All three patrol cars had activated their flashing lights.

¶9 Jentile initially pulled over, but before the officers could get out of their vehicles, Jentile pulled back out into traffic and drove off with the patrol cars in pursuit. One officer estimated that they were driving 45-50 miles per hour in a 25 mile-per-hour zone. After winding through a residential section of Whitefish, Jentile turned left onto a side street and made another immediate left into a driveway (which turned out to be his own). The first patrol car was able to stop several feet behind Jentile's vehicle. Officer Zebro, who was driving immediately behind the first patrol car, rear-ended that car with his own patrol car. When Jentile exited his vehicle, the officers tasered him, handcuffed him, and transported him to the hospital for a mental evaluation.

3

¶10   The Montana Highway Patrol (MHP) investigated the crash. In its investigative report, MHP concluded that the crash occurred because Officer Zebro was following too closely. Officer Zebro was not cited for this infraction, but he did receive a letter of reprimand in his file.

¶11   The Police initially presented felony charges to the County Attorney, but after reviewing the police video and reading the charging documents, the County Attorney declined felony prosecution. Instead, Jentile was charged with three misdemeanors: Resisting Arrest in violation of § 45-7-301, MCA; Reckless Driving in violation of § 61-8-301(1), MCA; and Eluding a Peace Officer in violation of § 61-8-316, MCA. In addition, the City of Whitefish (the City) requested restitution for the damage to the two patrol cars.

¶12   Pursuant to a plea agreement, the charges of Resisting Arrest and Reckless Driving were dismissed, and Jentile pled guilty to the remaining charge of Eluding a Peace Officer. In addition, the plea agreement specified that a hearing regarding restitution would be held separate from sentencing, and that Jentile would receive a two-year deferred imposition of sentence.

¶13   Jentile moved to dismiss the restitution hearing arguing that because he did not cause the collision, he should not have to pay for the damage to the patrol cars. Instead, he pointed out that the MHP investigative report indicated that Officer Zebro caused the collision by following too closely. In addition, Jentile asserted that he should not be liable for restitution because the City wrongfully involved itself in a civil matter, and it violated its own policies when it initiated the pursuit of Jentile's vehicle.

4

¶14 The Whitefish Municipal Court denied Jentile's motion to dismiss and held a hearing regarding restitution. At the hearing, Jentile argued that the officers were negligent per se: for initiating the pursuit when Jentile was not under arrest; by not controlling the pursuit in a safe manner; and by not discontinuing the pursuit. Jentile also argued that the City was negligent per se "for not adopting policies regarding persons with mental disorders as suggested by the Montana Law Enforcement Training Center." Additionally, Jentile pointed out that the MHP investigation concluded that Officer Zebro caused the accident, and that Officer Zebro had been officially reprimanded in writing over this incident.

¶15 Nevertheless, the Municipal Court awarded the City its requested damages and ordered Jentile to pay $7,327.81 in restitution. The Municipal Court found that the patrol cars collided "as a direct consequence of Jentile's erratic unlawful driving that required defensive, reactive, emergency maneuvering by police in visual pursuit."

¶16 Jentile appealed to the Eleventh Judicial District Court, but the District Court rejected all of his claims and affirmed the decision of the Municipal Court. Jentile now appeals to this Court from the decisions of the District and Municipal Courts regarding restitution. Notably, Jentile points out in his appeal brief that, after the conclusion of the lower court proceedings, his insurance company determined in its investigation of the accident that Officer Zebro was 100 percent liable, thus it declined to pay Jentile's claim.

**Standard of Review**

¶17 We review sentences that are not eligible for sentence review—i.e., sentences that impose less than one year of actual incarceration—for both legality and abuse of

5

discretion. *State v. Herd*, 2004 MT 85, ¶ 22, 320 Mont. 490, 87 P.3d 1017. A sentence is legal if it falls within statutory parameters. *State v. Hernandez*, 2009 MT 341, ¶ 3, 353 Mont. 111, 220 P.3d 25 (citing *State v. Kotwicki*, 2007 MT 17, ¶ 5, 335 Mont. 344, 151 P.3d 892). In this case, Jentile's sentence was deferred, thus he was not subject to actual incarceration, and we review his sentence for both legality and abuse of discretion. *See State ex rel. Holt v. District Court*, 2000 MT 142, 300 Mont. 35, 3 P.3d 608.

¶18 In addition, we review for clear error a lower court's factual findings regarding the amount of restitution assessed against a defendant. *State v. Johnson*, 2011 MT 286, ¶ 8, 362 Mont. 473, 265 P.3d 638 (citing *State v. Essig*, 2009 MT 340, ¶ 12, 353 Mont. 99, 218 P.3d 838).

## Discussion

¶19 *Whether the amount of restitution Jentile was ordered to pay should be reduced because of the alleged comparative negligence of the officer involved in the accident.*

¶20 Jentile argues on appeal that violating the law by eluding the police does not preclude the required comparative negligence analysis regarding Officer Zebro's purported negligence. Thus, Jentile contends that the Municipal Court erred when it did not apply a comparative negligence analysis to the restitution determination despite evidence of negligence by the party claiming restitution.

¶21 The City argues that the damage to the patrol cars was caused by Jentile's illegal conduct, and not by any negligence on the part of its officers. Moreover, the City claims that even if the defense of comparative negligence could be applied to a criminal restitution proceeding, Jentile did not assert that defense in this case. Thus, according to

6

the City, Jentile waived that defense, and the Municipal Court was correct in not considering it.

¶22 When a criminal defendant pleads guilty to a criminal offense, the sentencing court must impose restitution if the offender's criminal conduct resulted in pecuniary loss to a victim. *State v. Brownback*, 2010 MT 96, ¶ 19, 356 Mont. 190, 232 P.3d 385 (citing §§ 46-18-201(5), -241(1), -243(1) and (2), MCA). Moreover, we stated in *Brownback* that restitution " 'engraft[s] a civil remedy onto a criminal statute,' creating a procedural shortcut for crime victims who would be entitled to a civil recovery against the offender." *Brownback*, ¶ 19 (quoting *United States v. Martin*, 195 F.3d 961, 968 (7th Cir. 1999).

¶23 In assessing restitution in this case, the Municipal Court found that the patrol cars collided "as a direct consequence of Jentile's erratic unlawful driving that required defensive, reactive, emergency maneuvering by police in visual pursuit." The court dismissed Jentile's claim that Officer Zebro caused the accident by following too closely.

¶24 We disagree with the Municipal Court's hasty determination in this case. At the very least, the court should have examined Jentile's arguments in light of Montana's statutes and case law regarding emergency responders.

¶25 Section 61-8-329, MCA, provides that the driver of a motor vehicle may not follow another vehicle more closely than is reasonable and prudent. Nevertheless, § 61-8-107, MCA, provides that while a police officer may exceed the speed limit and disregard certain other traffic laws when responding to an emergency call or when in pursuit, this statute does not relieve the officer from the duty to drive with due regard for

7

the safety of all persons, nor does it protect the officer from the consequences of the officer's reckless disregard for the safety of others.

¶26 In *Stenberg v. Neel*, 188 Mont. 333, 338, 613 P.2d 1007, 1010 (1980), we stated that the "driver of an authorized emergency vehicle is charged with a duty of due care under the circumstances, and the circumstances include the privileges granted by section 61-8-107(2), MCA." In that case, defendant Neel was proceeding through an intersection under a green light when a patrol car driven by Officer Stenberg ran into him. Neel testified that he did not hear the siren or see the emergency lights on the patrol car prior to the accident. Officer Stenberg suffered a pinched nerve in his neck, and he brought suit against Neel to recover damages arising from the accident. The jury returned a verdict in Neel's favor, and we affirmed concluding that there was sufficient evidence from which a jury could find that Officer Stenberg failed to exercise the required standard of care. *Stenberg*, 188 Mont. at 340, 613 P.2d at 1011.

¶27 Similarly, in *Eklund v. Trost*, 2006 MT 333, ¶ 35, 335 Mont. 112, 151 P.3d 870, we held that under § 61-8-107, MCA, while police officers and authorized emergency personnel may, under limited circumstances, have authority to ignore certain laws of the road, they nevertheless have a duty to drive safely under the circumstances of a pursuit. They are not relieved from liability for driving in reckless disregard for the safety of others. *Eklund*, ¶ 36.

¶28 In this case, Jentile argued at the restitution hearing that the officers were negligent per se for initiating the pursuit when Jentile was not under arrest; by not controlling the pursuit in a safe manner; and by not discontinuing the pursuit. In making

these arguments, however, Jentile did not use the phrase "comparative negligence." Now on appeal, the City, citing M. R. Civ. P. 8(c), argues that comparative negligence is an affirmative defense that must be raised in the answer or it is deemed waived.

¶29 The first problem with the City's argument is that there is no "answer" here as it is a criminal case. The second problem is that in a proceeding for the determination of the amount of restitution, § 46-18-244(2), MCA, allows a criminal defendant to "assert any defense that the offender could raise in a civil action for the loss for which the victim seeks compensation."

¶30 We conclude here that Jentile's statements at the restitution hearing regarding negligence per se were sufficient to raise the defense of comparative negligence. Negligence per se is simply negligence established as a matter of law, which usually arises from a statutory violation. *Giambra v. Kelsey*, 2007 MT 158, ¶ 46, 338 Mont. 19, 162 P.3d 134 (citing *Black's Law Dictionary* 1057 (Bryan A. Garner ed., 7th ed., West 1999)). Moreover, we held in *Giambra* that the violation of a traffic statute which constitutes negligence per se does not bar the defense of contributory negligence. *Giambra*, ¶ 49.

¶31 Comparative negligence, on the other hand, "compares the conduct of the parties 'based on evidence and contributory negligence, as established by reasonable and prudent person standards.' " *Giambra,* ¶ 44 (quoting *Faulconbridge v. State*, 2006 MT 198, ¶ 99, 333 Mont. 186, 142 P.3d 777). Montana's comparative negligence scheme employs a "greater than" version of comparative negligence. Section 27-1-702, MCA. In other

words, a plaintiff may not recover if the plaintiff is found to be greater than fifty percent negligent.

¶32 We explained in *Giambra* that the " 'fact that both parties may well have been guilty of statutory violations is a further reason for leaving the comparison of the negligence to the jury . . . .' " *Giambra*, ¶ 48 (quoting *Reed v. Little*, 209 Mont. 199, 207, 680 P.2d 937, 941 (1984)). Thus, we concluded that

> under Montana's comparative negligence scheme, "the jury must consider evidence of negligence from violation of a highway traffic statute, which was a proximate cause of the accident, with other evidence of negligence on the part of *both* parties. The jury must then weigh or compare the negligence of *both* parties in reaching its verdict."

*Giambra*, ¶ 49 (emphasis added) (quoting *Reed*, 209 Mont. at 207, 680 P.2d at 941).

¶33 We declared in *Reed* that even in negligence per se cases, the fact finder must apportion negligence between the two parties in reaching its verdict. *Reed*, 209 Mont. at 206-07, 680 P.2d at 940-41; *see also Edie v. Gray*, 2005 MT 224, ¶ 19, 328 Mont. 354, 121 P.3d 516. Moreover, we explained in *Giambra* that Montana's comparative negligence scheme set forth in §§ 27-1-702 and -703, MCA,

> *requires* the fact-finder to consider the negligence of the claimant, injured person, defendants, and third-party defendants, even if a party proceeds under a claim of negligence per se or if the fact-finder determines that one or more persons was negligent per se. *In the absence of an express statutory provision to the contrary, a claim of negligence per se or a determination that a person was negligent per se does not preclude the defense of contributory negligence or bar the apportionment of negligence liability based on a comparative negligence scheme*.

*Giambra*, ¶ 51 (emphasis added).

¶34 Based on the foregoing, we conclude that the Municipal Court was obligated to consider any possible negligence on the part of Officer Zebro in making its restitution assessment. In a restitution hearing, the sentencing court is the finder of fact. Jentile's assertion of the officer's negligence was sufficient to apprise the court of his defense against the City's claimed loss for vehicle damage. We presume that laypeople "know the law,"[1] why then should we presume less of judges—i.e., that they "don't know the law." Presuming that the Municipal Court judge in this case knew the law, and presuming that he was aware of his obligation to sentence according to the law, at the very least the judge should have compared Officer Zebro's negligence with that of Jentile's negligence, if any, based on evidence presented at the restitution hearing.

¶35 With that said, we make the following observations regarding the Dissent.

---

[1] Indeed we went on at length about that presumption in *State v. Payne*, 2011 MT 35, ¶ 22, 359 Mont. 270, 248 P.3d 842, when we stated:

> We are persuaded by the State's argument that Payne is presumed to know the law of Montana. For at least a century, it has been the law in Montana that "ignorance of the law is no defense." *State ex rel. Rowe v. District Court*, 44 Mont. 318, 324, 119 P. 1103, 1106 (1911), *superseded by statute on other grounds in State ex rel Shea v. Judicial Standards Comm.*, 198 Mont. 15, 643 P.2d 210 (1982) ("If a person accused of a crime could shield himself behind the defense that he was ignorant of the law which he violated, immunity from punishment would in most cases result. No system of criminal justice could be sustained with such an element in it to obstruct the course of its administration."). We reiterated this rule in *State v. Trujillo*, 2008 MT 101, ¶ 15, 342 Mont. 319, 180 P.3d 1153, when we held that Trujillo unlawfully trespassed onto another's land despite his assertions that he had not passed through any gates or barriers intended to bar access. Similarly, in *State v. G'Stohl*, 2010 MT 7, ¶ 14, 355 Mont. 43, 223 P.3d 926, we noted that "people are presumed to know the law" and will not be relieved of criminal liability for their failure to comply with it.

¶36 First, were the facts such that the first patrol car collided with or even nearly collided with Jentile's vehicle, we may be more inclined to follow the Municipal Court's pronouncement that Jentile was entirely at fault for the collision. However, the video from Officer Zebro's patrol car clearly indicates that the officer driving the first patrol car had no problem stopping several feet behind Jentile's vehicle notwithstanding Jentile's "erratic unlawful driving." While the video shows that Jentile was speeding, the video also shows that Jentile applied his brakes to slow down prior to turning, and on at least one of the four turns he made while being pursued, he applied his turn signals. In addition, the "abrupt stop with no prior warning" that the Municipal Court referred to, was actually made by the driver of the first patrol car. The video does not even show Jentile's vehicle at that point because of the angle of the camera.

¶37 Second, if we were to follow the Dissent's logic, it would be Jentile's fault as well if Officer Zebro had struck a pedestrian in his pursuit of Jentile. However, as we noted earlier in this Opinion, while police officers and authorized emergency personnel may, under limited circumstances, have authority to ignore certain laws of the road, they nevertheless have a duty to drive safely under the circumstances of a pursuit. Section 61-8-107, MCA. They are not relieved from liability for driving in reckless disregard for the safety of others.

¶38 Third, the Dissent "presumes" that the Municipal Court Judge gave the briefs filed before it by the parties "a close review" because those briefs "are blanketed with highlighting and handwritten notes from start to finish." Dissent, ¶ 45 n.2. Actually, it is

12

impossible to tell whether the Municipal Court Judge, the District Court Judge, or counsel on appeal from either the State or the defense chose to highlight the briefs.

¶39    Fourth, in its decision to hold Jentile responsible for the entire amount of restitution, the Municipal Court does not even mention the MHP investigative report that found Officer Zebro negligent for following too closely.  It appears the Municipal Court disregarded that evidence entirely.

¶40    Fifth, and finally, while the Dissent criticizes this Court for changing the issue, the issue is and always has been one of comparative negligence.  Here, the Municipal Court treated this as an either/or proposition—either Jentile was 100% negligent or Officer Zebro was 100% negligent.  The Municipal Court did not conduct any sort of comparative negligence analysis.

¶41    Accordingly, we hold that the Municipal Court erred in failing to consider Jentile's argument that Officer Zebro was contributorily negligent, and in failing to use a comparative negligence analysis in determining restitution.  Furthermore, the District Court, in considering Jentile's appeal from the Municipal Court, should have reversed and remanded for further proceedings consistent with the law which we have set out in this Opinion.

¶42    We reverse and remand this cause to the District Court with instructions that it issue an order vacating Jentile's restitution judgment, and directing that the Municipal Court conduct a new restitution hearing consistent with this Opinion.

/S/ JAMES C. NELSON

13

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ BRIAN MORRIS

Justice Jim Rice, dissenting.

¶43 I agree with the Court's determination that "Jentile's assertion of the officer's negligence was sufficient to apprise the [Municipal] court of his defense against the City's claimed loss for vehicle damage." Opinion, ¶ 34. Indeed, Jentile's assertion that officer negligence caused the accident and the associated vehicle damage was the central focus of the restitution proceeding. My disagreement lies with the Court's conclusion that the Municipal Court made a "hasty determination" that failed to "examine[] Jentile's arguments in light of Montana's statutes and case law regarding emergency responders." Opinion, ¶ 24. I believe the record demonstrates that the Municipal Court carefully considered Montana law and Jentile's arguments. After conducting its review and hearing the evidence, the Municipal Court found that Jentile failed to stop in response to police direction, led police on a high speed chase through a residential neighborhood

14

when officers believed Jentile was a risk to public safety, and then "elected to make an abrupt stop with no prior warning." The Municipal Court determined that "police acted reasonably with respect to their measured response to an unknown and perilous situation," and that the vehicle collision was the "direct consequence of Jentile's erratic unlawful driving that required defensive, reactive, emergency maneuvering by police." The court found that the entire pursuit "was an unbroken course of events that was caused by Jentile's unlawful conduct." The Municipal Court noted Jentile's "civil law defenses," but concluded that none of them relieved his responsibility for the "full measure" of the damages. Reviewing the matter on appeal, the District Court held that "the Municipal Court correctly concluded . . . that the cause of the City's claimed damages was Defendant's fleeing from a legal traffic stop, not officer negligence." I believe the Court is remanding for work that has already been done by the Municipal Court and the District Court. I would affirm.

¶44 The method and extent of the Municipal Court's consideration of these issues is demonstrated by a close review of the record. Prior to the restitution hearing, Jentile moved to "dismiss the Restitution amount," asserting that the accident "was a direct result of the officer[']s negligence." He argued that the officers followed too closely and drove in a manner unsafe under the wet road conditions, and noted that he was entitled to raise "defenses that could be raised in a civil action." In his response brief, the prosecutor set forth an analysis that virtually mirrors the analysis the Court provides in ¶¶ 25-26 of the Opinion. He quoted the entirety of § 61-8-107, MCA, governing the duties of police vehicles and authorized emergency vehicles when in pursuit. He quoted,

15

as the Court does, from *Stenberg* that "[t]he driver of an authorized emergency vehicle is charged with a duty of care under the circumstances." The prosecutor explained that "[t]he issues before the Court at this stage of the sentencing hearing are whether there is a causal relation between Jentile's criminal conduct and the loss and the amount of said loss," including "*whether WPD*[1] *was contributorily negligent*, and whether such negligence was an intervening superceding act causing the collision" (emphasis added). He concluded by arguing that the officer "did not breach [h]is duty to operate his vehicle with due regard of the safety of others" and that "but for Jentile['s] criminal behavior and the circumstances created thereby, a pursuit and eventual collision between the pursuit vehicle[s] would not have occurred."

¶45 At the beginning of the restitution hearing, the Municipal Court gave the parties an opportunity to orally outline their legal positions prior to the taking of evidence. The Municipal Court noted that the prosecutor bore "the initial burden" and thus invited him to begin. The prosecutor did so, as follows:

> [Prosecutor]: According to case law the State, or the City here, will need to have proven a causal relation between the offender's criminal conduct and the loss. Your Honor, as set forth in our briefs, I would first like to point out that the defendant's negligence per se, defense/counter claim is misplaced. . . . As set forth in the brief Your Honor, I point your attention to Ray versus Green, which is a Colorado case—
>
> Judge: Which page number?
>
> [Prosecutor]: Page seven Your Honor.

---

[1] WPD refers to Whitefish Police Department.

Judge: *I've read all the briefs*, but for ease of reference from both the court and also for the defendant, now referring to the prosecutor's Response to Jentiles' Motion on Restitution Hearing, page seven, please continue. [Emphasis added.][2]

¶46 During defense counsel's opening statement, the prosecutor twice objected to defense counsel's characterization of the negligence issue, but the Municipal Court overruled the prosecutor's objection both times and permitted defense counsel to fully argue the issue as she pleased. The video of the pursuit and crash was then played, followed by testimony by Officer Zebro for the City and by Jentile for the defense. Counsel then gave closing arguments in which they again asserted that the other party had acted negligently and caused the accident.

¶47 The Municipal Court then issued its order imposing restitution. It summarized the legal authorities that had been provided by the parties:

> Extensive briefs were submitted to the Court in advance that contained a recital of law, supporting cases, legal contentions, and factual statements with arguments. The Judge read all submitted documents in advance of the hearing. . . . During the course of the hearing and by submitted briefs the Court received many cites to legal authority to include Montana statutory law, Montana and other states' case law, various contentions about causation, foreseeability, attenuation, intervening superseding acts, causal relation, the "But-For" test, legal liability based upon tort claims, civil law defenses, extenuating facts and circumstances, diminished mental capacity or temporary mental disabilities both in fact and in law, and the possibility of Federal law preclusions on monetary recovery for judgments/sentences from certain Federal payments (VA disability and SSI benefits).

Applying these authorities to the evidence presented at the hearing, the Municipal Court determined that Jentile had "created a dangerous situation," that the accident was "a

---

[2] I would note that the original set of briefs filed before the Municipal Court by the parties are blanketed with highlighting and handwritten notes from start to finish. Someone indeed gave them a close review, and I presume it was the Municipal Court Judge.

direct consequence of Jentile's erratic unlawful driving," that the officers had acted reasonably and in a "controlled way," and that "there was no affirmative defense pleaded and supported by defendant's counsel under the facts established at hearing that would bar the imposition of *a full measure* of restitution. . . ." (emphasis added). In other words, the Municipal Court determined that Jentile was 100% responsible for the accident, despite his assertions of officer negligence.

¶48   I would conclude that the Municipal Court's determinations are supported by substantial evidence presented at the hearing. While not using the phrase "comparative negligence," the Municipal Court clearly considered and compared the respective negligence of the parties and determined that the police had acted properly, while Jentile was entirely responsible for the accident and for a "full measure" of the damages. The Municipal Court gave long and careful consideration to these issues. I would affirm the District Court's conclusion that "the Municipal Court correctly concluded . . . that the cause of the City's claimed damages was Defendant's fleeing from a legal traffic stop, not officer negligence."

¶49   In response to this Dissent, the Court changes the issue. In ¶ 34 of the Opinion, the Court states its initial conclusion that "at the very least the [Municipal] judge should have compared Officer Zebro's negligence with that of Jentile's negligence, if any." Now that this Dissent has established from the record that the Municipal Court indeed compared the negligence of both parties, the Court changes horses in the middle of the stream and proceeds to disagree with the factual determinations that the Municipal Court entered about the negligence of the parties—a completely different issue. *See* Opinion,

18

¶ 36. The Court's disagreement with the Municipal Court's factual findings that Jentile was 100% responsible for the accident essentially directs a "verdict" in favor of Jentile. Having already determined that the Municipal Court's factual findings are erroneous, the Court has rendered a remand unnecessary except for entry of a new judgment.

/S/ JIM RICE