No. 05-705

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 301

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

JOSHUA DAVID SHARP,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADC 05-120,
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Wendy Holton, Attorney at Law, Helena, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; Jim Wheelis, Assistant
Attorney General, Helena, Montana

        Leo J. Gallagher, County Attorney; Michael T. Menahan, Deputy County
Attorney, Helena, Montana

Submitted on Briefs:   October 11, 2006

Decided:   November 22, 2006

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Joshua David Sharp appeals from an order of the First Judicial District Court, Lewis and Clark County, requiring him to pay restitution in the amount of $6,576.28. We affirm.

¶2     The issue on appeal is whether the District Court abused its discretion in ordering Sharp to pay restitution to the victim's insurance company.

## BACKGROUND

¶3     Sharp pled guilty to the charges of driving under the influence of drugs (fourth DUI), a felony, driving while his license was suspended or revoked, and driving without insurance. These charges arose when Sharp drove his vehicle into two parked cars while under the influence of a combination of prescription drugs which impaired his ability to drive.

¶4     Sharp entered into a plea agreement, but contested the amount of restitution he should be required to pay. As a result of the wreck, one of the car owners, Jennifer Jernigan, paid $1,427.09 out of pocket for a rental car and for expenses applied towards her insurance deductible. Jernigan requested reimbursement only for these expenses and did not provide evidence of any other pecuniary loss. Jernigan's insurer, Amica Mutual Insurance Company (Amica Mutual), paid Jernigan $6,576.68 for repairs to her vehicle. Pursuant to its right of subrogation set forth in its policy, Amica Mutual requested that Sharp reimburse this amount. Sharp did not contest that he owes Jernigan $1,427.09. He did argue, however, that Amica Mutual had no right of subrogation since Jernigan had

2

not been made whole.  The District Court ordered Sharp to pay restitution amounts to both Jernigan and Amica Mutual.  Sharp appeals.

## STANDARD OF REVIEW

¶5    We review a district court's imposition of a sentence for legality.  The standard of review in determining whether a sentence is legal is whether the district court abused its discretion.  *State v. Beavers*, 2000 MT 145, ¶ 6, 300 Mont. 49, ¶ 6, 3 P.3d 614, ¶ 6.

## DISCUSSION

¶6    **Did the District Court abuse its discretion in ordering Sharp to pay restitution to the victim's insurance company?**

¶7    Sharp bases his argument that he was not required to pay restitution to the victim's insurance company on the definition of victim found in § 46-18-243, MCA, and the made-whole doctrine adopted by this Court in *Skauge v. Mountain States Tel. & Tel. Co.*, 172 Mont. 521, 565 P.2d 628 (1977).  According to the criminal sentencing statutes, a victim includes "an insurer or surety with a right of subrogation to the extent it has reimbursed the victim of the offense for pecuniary loss."  Section 46-18-243, MCA.  In *Skauge*, in the context of a civil suit, we adopted the made-whole doctrine, holding that

> when the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney's fees, before the insurer can assert its right of legal subrogation against the insured or the tortfeasor.

*Skauge*, 172 Mont. at 528, 564 P.2d at 632.  Sharp asserts that Jernigan has not been made whole because she has not been reimbursed for her deductible, her out-of-pocket rental car expenses (although Sharp was ordered to pay these two items through

3

restitution), her automobile insurance premiums for and during the life of her policy, the post-accident diminished value of her vehicle, or interest on her out-of-pocket expenses. Thus, Sharp's conclusion is that since Jernigan has not been made whole, Amica Mutual is not an insurer with a right of subrogation as required by § 46-18-243, MCA. Ironically, it would appear that, under Sharp's theory, Jernigan would not be made whole unless Sharp was ordered to make further restitution to Jernigan for insurance premiums, diminished value of her vehicle, and interest on her out-of-pocket expenses.

¶8 The District Court based its decision to require Sharp to pay restitution to Amica Mutual on the applicable restitution statutes, which provide that "a sentencing court shall, as part of the sentence, require an offender to make full restitution to any victim who has sustained pecuniary loss, including a person suffering an economic loss." Section 46-18-241(1), MCA. A victim includes "an insurer or surety with a right of subrogation to the extent it has reimbursed the victim of the offense for pecuniary loss." Section 46-18-243(2)(a)(iv), MCA. The District Court concluded that Amica Mutual reimbursed Jernigan $6,576.28, and is therefore entitled to subrogation to that extent.

¶9 The dissent points out that, pursuant to § 46-18-251(3), MCA, restitution must be paid first to the victim "until the victim's unreimbursed pecuniary loss is satisfied," then to the crime victim's compensation and assistance program and any other government agency that has compensated the victim, then, finally, to any insurance company that has compensated the victim. The dissent would remand the case to the District Court to award restitution in this order. Pecuniary loss is defined as "all special damages, . . .

4

substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, . . . [and] the full replacement cost of property taken, destroyed, harmed, or otherwise devalued." Section 46-18-243(1)(a) and (b), MCA. In this case, Jernigan's only pecuniary loss substantiated by the record is the $1,427.09 that the District Court awarded. The dissent's conclusion would be appropriate if there was evidence that Jernigan requested and was entitled to further compensation, or if Jernigan had received compensation from the crime victim's compensation and assistance program or any other government agency. That, however, is not the case before us.

¶10    We affirm the judgment of the District Court.


                                                            /S/ W. WILLIAM LEAPHART


We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE


Justice Patricia O. Cotter dissents.

¶11    I dissent. Although the briefs of the parties are unclear on several points, what is apparent is that Jernigan—the primary victim—has not been reimbursed for her out-of-pocket expenses. Section 46-18-251(3)(a), MCA, provides that in the payment of restitution, disbursements are to be made first to the victim until her unreimbursed

5

pecuniary loss is satisfied. Next in order of priority for restitution is the crime victim's compensation and assistance program, followed by any other government agency that has compensated the victim for her losses. An insurance company that has compensated the victim—such as Amica Mutual here—is fourth in line. Section 46-18-251(3)(d), MCA. In light of this statutory directive, in my judgment, the District Court erred in concluding that Amica Mutual was entitled to its subrogation recovery ahead of Jernigan. I would therefore reverse and remand for an order of restitution consistent with the hierarchy set forth in the statute. I dissent from our refusal to do so.

/S/ PATRICIA COTTER

Justice James C. Nelson joins in the dissent of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON