FILED

06/29/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0406

DA 19-0406

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 156

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

SAMI JO LODAHL,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                    In and For the County of Gallatin, Cause No. DC 17-73C
                    Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Robin A. Meguire, meguirelaw.com, Great Falls, Montana

       For Appellee:

       Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant
       Attorney General, Helena, Montana

       Marty Lambert, Gallatin County Attorney, Bjorn Boyer, Deputy County
       Attorney, Bozeman, Montana

Submitted on Briefs:  March 17, 2021

Decided:  June 29, 2021

Filed:

_____
                           Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1     Sami Jo Lodahl (Lodahl) appeals an order from the Eighteenth Judicial District Court, Gallatin County, sentencing her to pay restitution to the Montana State Fund (MSF) for benefits it paid to Sergeant Dawn Miller (Miller) from the Gallatin County Detention Center related to an on-the-job injury.   Lodahl argues the MSF does not qualify as a "victim" under § 46-18-243(2)(a)(iv), MCA, requiring payment of the restitution amount, in essence, would cause her unjust hardship given her dire financial circumstances, and the court should have considered Miller's alleged comparative negligence when awarding restitution.

¶2     We state the issues on appeal as follows:

*1. Does the MSF qualify as a victim insurer under § 46-18-243(2)(a)(iv), MCA?*

*2. Did the District Court err by failing to adjust or otherwise waive payment by Lodahl of the restitution ordered?*

*3. Did the District Court err in imposing restitution without considering Miller's alleged comparative negligence?*

We affirm in part, reverse in part, and remand for further action consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     The State charged Lodahl with felony assault on a peace officer in violation of § 45-5-210, MCA, for Lodahl's actions on January 30, 2017, of striking Miller, after Miller requested Lodahl sit down while waiting for an initial appearance in justice court in another matter.   At the time of the incident, Lodahl testified she was extremely scared and

extremely sick. In the incident, Miller incurred abrasions on her chin and cheek, pain in her ribs, a sprained finger, and her glasses were bent in half. Following this incident, Lodahl was transported to the Montana State Hospital for mental health treatment.

¶4 Pursuant to a plea agreement, Lodahl pleaded guilty to the offense of misdemeanor assault, in violation of § 45-5-201, MCA, in exchange for the State's dismissal of the original charge, assault on a peace officer, a felony. The plea agreement called for Lodahl to pay restitution to the MSF for its payments to Miller and her medical providers. At the time Lodahl appeared on February 26, 2018, for her change of plea there was dispute as to the amount of restitution as well as issues related to her ability to pay restitution. The parties later clarified that Lodahl did not dispute the requested amount of restitution— $4,891.29 to the MSF and $1,261.20 to Miller—but Lodahl asserted the MSF did not qualify as a "victim" under § 46-18-243(2)(a)(iv), MCA, and further that she should not be required to pay the restitution given her dire financial situation. As such, the court held a restitution hearing on August 30, 2018. At that hearing, the State presented testimony from Miller and Janis McArthur (McArthur), a claims representative with the MSF—the asserted victims in this cause. Lodahl then testified on her own behalf.

¶5 Before witness testimony, Lodahl's counsel advised that the MSF was not entitled to restitution for its general damages and further asserted, without objection, that he would "ask the court also to listen to argument that Ms. Lodahl does not have the ability to pay. That applies both to restitution and to fees." McArthur testified the MSF paid $3,495.87 directly to Miller's medical providers for medical care and treatment associated with the

3

injuries she sustained in the incident with Lodahl and Miller did not receive or pay any medical bills because the providers billed the MSF directly. McArthur additionally testified the MSF paid Miller $1,395.41 for lost wages.

¶6     Miller confirmed she ran all her medical bills through her workers' compensation insurance and thus never personally received a bill. She testified the affidavit of loss she submitted to the court was for her lost income not covered by workers' compensation, totaling $1,261.20. On cross-examination, Lodahl's counsel inquired as to Miller's actions during the encounter, obtaining her acknowledgment the detention facility had "changed procedures because you put yourself at risk handling that situation the way you handled it." Lodahl's counsel did not argue Miller was negligent or that Miller's negligence contributed to the cause of her injuries.

¶7     Lodahl testified she is a single mother of two boys—aged 10 and 7 at the time of sentencing. She suffers mental health problems—diagnosed with a bipolar disorder, as well as anxiety with agoraphobia—which have resulted in the Social Security Administration determining her to be disabled and entitled to Social Security Disability Insurance (SSDI). Lodahl works 15 to 23 hours per week at a motel. She has attempted to increase her work hours, but such increases have resulted in mental health decompensations. Lodahl provided unrefuted testimony regarding her financial situation. Upon receiving each paycheck, Lodahl obtains cash and then separates it into several envelopes—for rent, gas, power, car insurance, phone/internet—which she sets aside so she has enough to pay these necessary living expenses. Lodahl does not have sufficient

4

income for daycare, so at a minimum, she needs to be able to reach her children via telephone when she is working and they are not at school.  Her budget is as follows:

| Income: | Monthly | Annual |
|---|---|---|
| SSDI | 942 | 11,304 |
| 8 month motel | 600 | 4,800 |
| 4 month peak motel | 800 | 3,200 |
| **Total Income before taxes** | **$1,542–1,742** | **$19,304** |
| | | |
| Expenses: | | |
| Rent | 900 | 10,800 |
| Car (2004 Honda CRV w/over 200K miles) | 300 | 3,600 |
| Car Insurance | 103 | 1,236 |
| Phone (hers) | 45 | 540 |
| Phone (10-yr-old son but he can usually earn enough to pay this) | 35 | 420 |
| Internet | 70 | 840 |
| Gas | 120 | 1,440 |
| Power (heat/electricity – ranges from $55 in summer to $180 in winter) | 55 | 660 |
| **Total Expenses** | **$1,628** | **$19,536** |

This budget does not include clothes, school-related expenses, or any unexpected expenses. This budget also does not include food for three—but Lodahl receives $368 per month in food stamps and $200 from her sons' father which she uses for their food budget.

¶8     Lodahl argued at the restitution hearing the MSF was not a victim under § 46-18-243(2)(a)(iv), MCA, because it had not suffered a "pecuniary loss" and the statute did not authorize payment of "general damages."  She argued the MSF is an insurer that distributes money as a regular and expected part of business and thus has only general damages, which cannot be considered in determining restitution.  Lodahl contended further she was unable to afford and would be unduly burdened by the full amount of restitution suggested.

5

¶9 In February 2019, the District Court issued its findings of fact and conclusions of law regarding the issue of restitution. It concluded the MSF qualified as a victim under § 46-18-243(2)(a)(iv), MCA, and thus was entitled to restitution. The court was "not persuaded by the Defendant's argument that she is unable to pay restitution." It reasoned, "[a]lthough it might be inconvenient for Defendant to go without internet or a phone for her son, it would be grossly unfair to Sergeant Miller and the [MSF] to allow the Defendant to escape her obligation to make restitution while she continues to enjoy the comforts of life."

¶10 The District Court sentenced Lodahl to six months in the Gallatin County Detention Center, with all but 20 days suspended, for which Lodahl was granted credit for time served. The court ordered her to pay $1,261.20 in restitution to Miller and $4,891.29 in restitution to the MSF within five months of the execution of the sentence. It waived all costs and fees except for a $100 flat administration fee for the restitution. The District Court stayed execution of Lodahl's sentence pending this appeal. Lodahl appeals only the restitution order.

## STANDARDS OF REVIEW

¶11 We review criminal sentences for legality to determine if they are statutorily authorized. *State v. Patterson*, 2016 MT 289, ¶ 9, 385 Mont. 334, 384 P.3d 92. Restitution awards create mixed questions of law and fact that we review de novo. *State v. Cleveland*, 2018 MT 199, ¶ 7, 392 Mont. 338, 423 P.3d 1074; *Patterson*, ¶ 9. We review for correctness the legality of a restitution obligation. *Cleveland*, ¶ 7.

## DISCUSSION

¶12    *1. Does the MSF qualify as a victim insurer under § 46-18-243(2)(a)(iv), MCA?*

¶13    Restitution statutes "engraft[] a civil remedy onto a criminal statute, creating a procedural shortcut for crime victims who would be entitled to a civil recovery against the offender." *City of Whitefish v. Jentile*, 2012 MT 185, ¶ 22, 366 Mont. 94, 285 P.3d 515 (internal quotation omitted).  A district court "shall . . . require payment of full restitution" as part of a criminal sentence if it finds that a victim has sustained a pecuniary loss.  Section 46-18-201(5), MCA.  The term "victim," in relevant part, means "a person who suffers loss of property, bodily injury, or death as a result of . . . the commission of an offense" or "an insurer or surety with a right of subrogation to the extent it has reimbursed the victim of the offense for pecuniary loss."  Section 46-18-243(2)(a)(i) and (iv), MCA.  "Pecuniary loss" is defined as:

> all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without limitation out-of-pocket losses, such as medical expenses, loss of income, expenses reasonably incurred in obtaining ordinary and necessary services that the victim would have performed if not injured, expenses reasonably incurred in attending court proceedings related to the commission of the offense, and reasonable expenses related to funeral and burial or crematory services.

Section 46-18-243(1)(a), MCA.

¶14    Lodahl argues the District Court should not have treated the MSF as a victim that suffered a pecuniary loss.  The District Court concluded the MSF was entitled to restitution as a qualifying insurer victim under § 46-18-243(2)(a)(iv), MCA: the MSF is an insurance

company that compensated the victim, Miller, for her qualifying losses, including medical expenses and lost wages, which resulted from the assault.

¶15 Lodahl contends the restitution statutes' plain language requires a victim insurer to have "reimbursed" the victim directly for her "out-of-pocket" losses, terms she argues require the qualifying losses first be paid by the victim and subsequently reimbursed by the insurer. Citing various dictionary definitions of "reimburse," Lodahl suggests it means to refund, restore, replenish, indemnify, or pay back or compensate for loss incurred. Lodahl argues further the MSF cannot qualify as a victim insurer because it was contractually obligated to pay Miller as a direct benefit of her employment. Lodahl finally contends the MSF cannot qualify as a victim because it has no "cognizable right" of subrogation when Miller was not yet "made whole" at the time of the District Court's order.

¶16 The District Court correctly determined the MSF qualifies as a victim insurer. The language of § 46-18-243(1)(a) and (2)(a)(iv), MCA, makes plain an entity that insures against an individual's pecuniary losses—like medical expenses and lost income—is entitled to recover what it pays when that individual is victimized. Here, Miller sustained pecuniary loss of income and related medical expenses when Lodahl injured her; the MSF reimbursed Miller for those losses. We are not persuaded the terms "reimburse" and "out-of-pocket loss" require a victim to first pay her own medical expenses before an insurer provides coverage compensable under the restitution statute. We interpret statutes in the context of the statutory scheme as a whole to pursue the Legislature's intent and to avoid an absurd result. *See* § 1-2-101, MCA ("Where there are several provisions or

8

particulars, such a construction is, if possible, to be adopted as will give effect to all."); §

1-2-102, MCA ("[T]he intention of the legislature is to be pursued if possible."); *State v.*

*Brendal*, 2009 MT 236, ¶ 18, 351 Mont. 395, 213 P.3d 448 ("We . . . read and construe the

statute as a whole to avoid an absurd result and to give effect to a statute's purpose."

(quoting *In re Marriage of Shirilla*, 2004 MT 28, ¶ 12, 319 Mont. 385, 89 P.3d 1)).  The

purpose of the statutory scheme is to ensure the compensation and protection of victims.

Lodahl's interpretation would impose an artificial and burdensome scheme for any victim

who has insurance, altering the typical insurer-insured relationship to require the victim to

pay her medical providers directly before seeking insurance benefits in order to obtain

restitution.  *See State v. Fenner*, 2014 MT 131, ¶¶ 10-12, 375 Mont. 131, 325 P.3d 691

(refusing to interpret Montana's restitution statues in a way that would benefit the

wrongdoer over the victim).

¶17     In support of her argument, Lodahl cites *State v. Barrick*, 2015 MT 94, 378 Mont.

441, 347 P.3d 241, characterizing an "out-of-pocket expense" as "[a]n expense paid from

one's own funds."  *Barrick*, ¶ 17 (quoting Black's Law Dictionary 659 (9th ed. 2009))

(alteration in original).   The referenced statement in the context of the case is

distinguishable because it was discussing a different subsection of the statute.  *Barrick*,

¶¶ 16-17 (citing § 46-18-243(1)(d), MCA, allowing "reasonable out-of-pocket expenses

incurred by the victim in filing charges or in cooperating in the investigation and

prosecution of the offense").  In *State v. Lowry*, 2019 MT 191, ¶ 17, 397 Mont. 11, 446 P.3d

1148, quoting *Barrick*, ¶ 17, we noted, "[u]nlike restitution ordered under subsection (1)(a),

subsection 1(d) 'provides for recovery of victim expenses involving a cash payment or outlay.'"

¶18 It is immaterial that the MSF was contractually obligated to pay Miller's expenses. Not only do §§ 46-18-201(5), -243(1)(a), and -243(2)(a)(iv), MCA, not mention this as a consideration when determining whether a particular entity qualifies as an insurer, the restitution statutes contemplate this type of contractual arrangement by explicitly recognizing insurers as victims to the extent they have made payments for the victims' losses. Section 46-18-243(1)(a)(iv), MCA. The statute makes no distinction between a workers' compensation insurer and an insurer with which the victim has a direct policy for indemnification. *See* § 1-2-101, MCA (stating in construing statutes, we are "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted").

¶19 Finally, we are not persuaded by Lodahl's argument that the MSF has no cognizable right to subrogation. Lodahl cites *State Compensation Insurance Fund v. McMillan*, 2001 MT 168, ¶¶ 7-13, 306 Mont. 155, 31 P.3d 347, contending that Miller needed to be "made whole" before the MSF could be entitled a right to subrogation. *See also Skauge v. Mountain States Tel. & Tel. Co.*, 172 Mont. 521, 528, 565 P.2d 628, 632 (1977) ("[W]hen the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney's fees, before the insurer can assert its right of legal subrogation against the insured or the tort-feasor."). First, Lodahl is not in a position to assert Miller's rights.

10

Further, Miller testified Lodahl's restitution payment would make her whole. And the statutory scheme specifically calls for restitution payments to be distributed to the victim before going to any insurer. *See* § 46-18-251(3), MCA. Finally, the MSF clearly has a cognizable right to subrogation because the Legislature explicitly so provided. *See* § 39-71-116(17), MCA (including the MSF in the definition of "insurer"); § 39-71-414(1), MCA (entitling an insurer to subrogation against third-party recovery "for all compensation and benefits paid or to be paid under the Workers' Compensation Act"); *see also Fenner*, ¶ 12 ("[The victim] and his insurer are entitled to any damages that could be pursued against [the defendant] in a civil action, regardless of any subrogation issues between them."); *State v. Sharp*, 2006 MT 301, ¶¶ 7-10, 334 Mont. 470, 148 P.3d 625 (affirming the insurer's entitlement to subrogation despite the defendant's argument that the insurer had no right to subrogation until the victim had been made whole).

¶20 The District Court thus correctly concluded the MSF was an insurer victim entitled to restitution for pecuniary loss.

¶21 *2. Did the District Court err by failing to adjust or otherwise waive payment by Lodahl of the restitution ordered?*

¶22 Lodahl next argues the District Court erred when it found she could afford to pay restitution. Citing § 46-18-101(3)(h), MCA, and *State v. Brownback*, 2010 MT 96, ¶ 28, 356 Mont. 190, 232 P.3d 385, Lodahl asserts that "[w]hile a district court is no longer required to consider a defendant's financial resources and ability to pay when imposing restitution obligations, the State's general correctional and sentencing policy recognizes that a criminal defendant should be financially able to pay the same."

¶23 Lodahl is correct that our restitution statutes require courts determine restitution amounts without considering an offender's ability to pay.[1] *See* § 46-18-241, MCA. Section 46-18-201(5), MCA, provides, "the sentencing judge shall, as part of the sentence, require payment of full restitution to the victim, as provided in 46-18-241 through 46-18-249." Sections 46-18-241 through 46-18-249, MCA, provide additional instructive information as well as limiting, waiving, and adjusting statutory provisions relating to restitution awards, including for example the ability of the court to order the offender to perform community service under certain circumstances, enter a civil judgment for the full amount of restitution, and adjust or otherwise waive payment of the ordered restitution amount. *See* §§ 46-18-241(3), -249, and -246, MCA.

¶24 Section 46-18-201(5), MCA, must be applied together with these limiting, waiving, and adjusting statutes. Here, Lodahl did not contest the amount of restitution to be ordered, but in essence, asserted restitution should be waived or adjusted as unjust under her

---

[1] Previously, courts were required to consider the financial resources and future ability of the offender to pay restitution in ordering restitution. *See* § 46-18-244, MCA (1999); *State v. Pritchett*, 2000 MT 261, ¶ 14, 302 Mont. 1, 11 P.3d 539. With legislative changes in 2001 and 2003, the Legislature removed the requirement for district courts to consider the offender's ability to pay when determining restitution. *See* 2003 Mont. Laws ch. 272, § 6; 2001 Mont. Laws ch. 284, § 1; *State v. McMaster*, 2008 MT 268, ¶ 45, 345 Mont. 172, 190 P.3d 302. It is no longer error for the district court to not consider the financial resources of the defendant before ordering restitution. Section 46-18-246, MCA, however—which allows the court to adjust or waive the amount of restitution to be paid if it would be unjust to require payment as ordered—has remained substantively unchanged. The effect of the changes to § 46-18-244, MCA, is, thus, to move the burden to the defendant to raise and prove that requiring full payment of the restitution award would be unjust under the circumstances. In this case, Lodahl clearly raised and demonstrated, without challenge from the State, that all her money goes to personal necessities and necessities for raising her children, she is unable to pay restitution, and it would be unjust to require payment.

12

particular financial circumstances. Section 46-18-246, MCA, provides "[a]n offender may at any time petition the sentencing court to adjust or otherwise waive payment of any part of any ordered restitution" if the court determines "it otherwise would be unjust to require payment as imposed."

¶25 In *State v. Erickson*, 2018 MT 9, ¶ 16, 390 Mont. 146, 408 P.3d 1288, we explained the "four conditions that would permit a court to adjust or waive restitution":

> (1) the circumstances upon which the court based the imposition of restitution no longer exist; (2) the amount of the victim's pecuniary loss no longer exists; (3) the method or time of payment no longer exists; or (4) that it otherwise would be unjust to require payment as imposed.

We held that an offender bears the burden "to request and factually demonstrate his eligibility for relief under at least one of the four conditions." *Erickson*, ¶ 17.

¶26 Although Lodahl did not file a formal petition citing § 46-18-246, MCA, seeking waiver or adjustment of restitution as otherwise unjust under her financial circumstances, based on discussions between Lodahl's counsel, the prosecution, and the District Court at the plea change and restitution hearings combined with the testimony presented at those hearings, it was clear the parties and the District Court understood Lodahl sought waiver or adjustment to the payment of the restitution as unjust under the circumstances.[2] That was the very basis for scheduling a separate restitution hearing, as there was no dispute as

---

[2] It is likely her failure to file an actual petition was resultant from the custom and practice of the judicial district in addressing restitution issues. We recognize it is the custom and practice, especially in very busy judicial districts, for district courts to permit parties to raise restitution issues in open court without necessity of a formal petition or briefing.

13

to the restitution amount itself. In this case, based on the discussions between the court and counsel at the change of plea and restitution hearings, it is evident the custom and practice in the judicial district permitted restitution challenges, including those seeking waiver or adjustment, to be brought orally in open court. Neither the court nor the prosecutor asserted insufficiency with Lodahl's request for adjustment or waiver of the restitution amount. And the State did not object to Lodahl's testimony regarding her inability to pay as irrelevant to determining restitution without a formal petition under § 46-18-246, MCA. Pursuant to § 46-18-246, MCA, where adjustment or waiver of payment of restitution is sought, the court is required to set a hearing and give the victim opportunity to be heard at the hearing. Here, the court held a separate restitution hearing, at which Miller and a representative from the MSF were present and given the opportunity to be heard—indeed both testified. While it may have been preferable for Lodahl to file a formal petition pursuant to § 46-18-246, MCA, seeking waiver or adjustment of restitution as otherwise unjust under the circumstances, on the record before us—the evidentiary presentation substantiating that the parties and court fully understood the challenge and that the hearing and opportunity of the victim to be heard requirements of § 46-18-246, MCA, were fully met—requiring such unnecessarily elevates form over substance.[3]

---

[3] We take this opportunity, however, to remind courts that address initial restitution determinations and adjustment and waiver issues at the same hearing, to first determine the restitution amount and then determine the propriety of adjusting or waiving the payment of the restitution ordered when the issue is raised and properly substantiated by the offender.

14

¶27 Lodahl suffers debilitating mental health problems—which likely played at least some role in her offense[4]—and is clearly indigent—qualifying for food stamps and public defender services. Her annual income, coming primarily from SSDI benefits, is $2,416 less than the Federal poverty level[5] and her annual expenses exceed her annual income to the extent she has to rely on earnings from her 10-year-old son to meet her expenses. The District Court ignored the uncontroverted evidence of Lodahl's dire financial situation and then failed to appropriately apply § 46-18-246, MCA, to waive restitution, as unjust under the particular circumstances present here. The District Court concluded Lodahl had disposable income for her and her son's phone, the internet, and an auto payment, which could presumably be used to pay restitution. This conclusion is absurd. To adequately care and provide for her school-aged children, having a phone, internet, and transportation are not merely discretionary luxuries, but minimal requirements. Having a telephone to interact with work and her children—especially when Lodahl does not possess the financial where-with-all to secure daycare/after-school-care when she must work—is not a luxury but an essential service. Internet is routinely used for schoolwork and even more so since the pandemic. Further, given limited public transportation in Bozeman and its regular harsh weather conditions, it is not a luxury to have a vehicle to get to and from work and

[4] At the change of plea hearing, Lodahl explained on the day of the assault she "was extremely scared, extremely sick" and she was committed to the Montana State Hospital for mental health treatment the day following the assault.

[5] 2020 Federal Poverty Guidelines provide $21,720 as the poverty level for a family of three. *See* Annual Update of the HHS Poverty Guidelines, 85 Fed. Reg. 3060, 3060 (Jan. 17. 2020), https://perma.cc/2W7L-ZFR3.

to transport children for school, activities, and emergencies. Lodahl does not drive a luxury vehicle or even a moderate vehicle, but rather drives a 17-year-old Honda CRV vehicle with over 200,000 miles on it. Her desperate financial situation also likely resulted in Lodahl having to pay more for the vehicle than the vehicle would otherwise be worth, as she had to finance it over time. Quite commendably, Lodahl has maintained insurance on the vehicle to avoid putting other's at even greater risk. Lodahl's vehicle expenses cannot reasonably be considered discretionary. If Lodahl's circumstances do not support waiver of the restitution as unjust, as she asserted at sentencing, it is doubtful § 46-18-246, MCA, could ever be interpreted to waive restitution.[6]

¶28    The Dissents assert this Court ignores clear legislative intent. Not so. Section 46-18-101(2)(h), MCA, provides: "Sentencing practices must emphasize restitution to the victim by the offender. A sentence must require an offender *who is financially able to do so* to pay restitution." (Emphasis added.) The Legislature then provided a process for waiving restitution "at any time" when it "otherwise would be unjust to require payment as imposed." Section 46-18-246, MCA. The Dissents would require a

---

[6] Further, requiring restitution as a condition of probation when an offender is unable to pay for it, runs the risk of the court extending the term of probation—subjecting the offender to extended probationary conditions and supervision costs—beyond that which would otherwise be imposed, merely to provide the offender more time to pay restitution due to nothing more than indigence. In this case, the District Court stayed execution of Lodahl's suspended sentence pending appeal so her restitution payments would be supervised during her probation. Without that stay, Lodahl would have long since completed her suspended sentence and no longer would be subject to state supervision. The District Court noted at sentencing if restitution was not paid within her six-month probationary period, the restitution could be turned into a civil judgment or Lodahl's sentence could be revoked, extending state supervision of her once again.

district court to order restitution at sentencing regardless of evidence and argument showing it would be unjust to require payment and then require the defendant to petition after sentencing is complete, when she no longer has a right to court-appointed counsel and if seeking a waiver because of her inability to pay, clearly has no money to hire an attorney. The Dissents argue such a path is preferable and required. This is an overly formulistic reading of the statute that would lead to an unjust and cruel outcome in this case. Lodahl did not contest the amount of restitution but challenged and put on evidence that she could not reasonably be expected to pay the restitution and the victims were given an opportunity to be heard on that issue as required under § 46-18-246, MCA. While the Legislature removed the requirement for a district court to consider ability to pay, it did not amend or change §§ 46-18-101(2)(h) and -246, MCA. Thus, the Legislature moved the burden to the defendant to raise, argue, and provide evidentiary support to waive restitution when it would be otherwise unjust. Section 46-18-246, MCA, says this can be done "at any time." The Dissents would have us ignore this clear language or add the words "after sentencing" to get to their desired result. This we cannot do. *See* § 1-2-101, MCA ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, *not to insert what has been omitted or to omit what has been inserted*." (emphasis added)). The court must impose the full restitution at sentencing, but it is not precluded from waiving said restitution in the same order. In fact, the statute provides for the opposite.

¶29    *3. Did the District Court err in imposing restitution without considering Miller's alleged comparative negligence?*

17

¶30 As we have determined the District Court erred by not waiving payment of the ordered restitution amount, we need not address Lodahl's alternate argument, made for the first time on appeal,[7] that the District Court failed to consider the affirmative defense of Miller's comparative negligence when determining the amount of Lodahl's restitution obligation.

## CONCLUSION

¶31 The District Court correctly determined the ordered restitution amount but erred in ignoring and misapprehending the uncontroverted evidence of Lodahl's dire financial situation and failed to appropriately apply § 46-18-246, MCA, to conclude it would otherwise be unjust to require Lodahl to pay the restitution imposed.

¶32 Affirmed in part, reversed in part, and remanded to waive Lodahl's payment of the restitution imposed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR

---

[7] "It is well settled that a party may not change its theory on appeal from that advanced in the trial court; nor may a party raise an argument for the first time on appeal." *State v. Lewis*, 2012 MT 157, ¶ 22, 365 Mont. 431, 282 P.3d 679 (quoting *State v. Shepard*, 2010 MT 20, ¶ 12, 355 Mont. 114, 225 P.3d 1217) (internal quotation marks omitted); *see also State v. Dewitz*, 2009 MT 202, ¶ 30, 351 Mont. 182, 212 P.3d 1040 ("[I]t is unfair to fault the trial court on an issue it never had the opportunity to consider."). As Lodahl did not raise this argument with the District Court it is not preserved for appeal.

Justice Beth Baker, concurring in part and dissenting in part.

¶33 I would affirm the District Court in its entirety. Disregarding its rationale about what Lodahl could or could not afford, the court applied the restitution statutes correctly, and Lodahl may petition the sentencing court for waiver of payment under § 46-18-246, MCA, "at any time." The Court wrongly imports that statutory remedy into the sentencing process and holds the District Court in error for its "fail[ure] to appropriately apply" a statute that no party cited or argued and that neither party briefs on appeal. To that extent, I dissent from its Opinion. I agree with the Court that MSF qualifies as a victim insurer under § 46-18-243(2)(a)(iv), MCA, and that Lodahl did not preserve the "comparative negligence" argument she raises on appeal.

¶34 Montana's restitution statutes require imposition of "full" restitution "as part of the sentence," regardless of an offender's ability to pay. *See* §§ 46-18-201(5), -241(1), MCA; *State v. Ferre*, 2014 MT 96, ¶¶ 20, 22, 374 Mont. 428, 322 P.3d 1047 (citing *State v. Brown*, 2008 MT 115, ¶ 18, 342 Mont. 476, 182 P.3d 75) (explaining that "[s]ince 1997, § 46-18-241(1), MCA, clearly instructs sentencing courts to require an offender to make *full* restitution to any victim of the offense who has sustained pecuniary loss" (internal quotation marks omitted, emphasis original)). The Court acknowledges this requirement. Opinion, ¶ 13. The Legislature amended the restitution statutes in 2003, in part to "ensur[e] that the duty to pay continues to exist until restitution is fully paid" and to provide additional avenues under which restitution may be collected. *See* H.B. 220 Preamble, 58th Leg., Reg. Sess., vol. I, ch. 272 (Mont. 2003). The statutes

19

requiring full restitution ensure a civil remedy for the victim even when an offender no longer is under the constraints of her criminal sentence. *See* § 46-18-241(1), MCA (providing that "[t]he duty to pay full restitution under the sentence remains with the offender or the offender's estate until full restitution is paid, whether or not the offender is under state supervision"); § 46-18-249(1), MCA (providing that the amount of restitution to be paid to a victim "may be treated as a civil judgment against the offender and may be collected by the victim at any time, including after state supervision of the offender ends, using any method allowed by law, including execution upon a judgment, for the collection of a civil judgment"). These statutes are quite clear that an offender's financial circumstances play no role in determining the amount of restitution to impose, which is based exclusively on the victim's "pecuniary loss." Sections 46-18-241 through -244, MCA.

¶35    If, however, the court finds at the time of sentencing that an offender is not able to pay any restitution "because of circumstances beyond the offender's control," it may account for those circumstances by allowing the offender to perform community service as "a credit against restitution" during the time she is unable to pay. *See* §§ 46-18-241(3), 46-18-101(3)(h), MCA. The victim may recoup the credited amounts through the county restitution fund. *See* § 46-18-250(2), MCA. The law further accommodates an offender's inability to pay by disallowing a court from revoking a suspended or deferred sentence for an offender's default on restitution payments when the default is not attributable to her lack of good faith effort to obtain the necessary funds. Sections 46-18-247(2),

20

46-18-203(6)(b), MCA; *see also State v. Welling,* 2002 MT 308, ¶¶ 15-16, 313 Mont. 67, 59 P.3d 1146 (revocation of an offender's deferred or suspended sentence cannot be based on the offender's failure to make restitution payments if failure to pay is not due to the offender's lack of good faith effort).

¶36 Finally, § 46-18-246, MCA, allows an offender to petition the court "to adjust or otherwise waive payment of any part of any ordered restitution," which she may do "at any time." The court may grant such relief if it finds that "the circumstances upon which it based the imposition of restitution, amount of the victim's pecuniary loss, or method or time of payment no longer exist or that it otherwise would be unjust to require payment as imposed[.]" Section 46-18-246, MCA. This is a sequential process. Unlike § 46-18-241(3), MCA, providing for the sentencing court's option to allow community service in lieu of payment, § 46-18-246, MCA, requires a petition to adjust the "*ordered* restitution." (Emphasis added.) It mandates the sentencing court to set a hearing on the petition, to give notice to the victim, to provide the victim an opportunity to be heard on the reasons underlying the petition, and to make a finding supporting any decision to adjust or waive payments, modify the amount to be paid, or extend the restitution schedule. Section 46-18-246, MCA; *see also Brownback*, ¶ 28 n.2 (noting that § 46-18-246, MCA, allows a court to "consider an offender's ability to pay restitution, but only in response to a subsequent petition to adjust or waive the ordered restitution").

¶37 In *Erickson*, ¶ 16, we explained the "four conditions that would permit a court to adjust or waive restitution":

21

(1) the circumstances upon which the court based the imposition of restitution no longer exist; (2) the amount of the victim's pecuniary loss no longer exists; (3) the method or time of payment no longer exists; or (4) that it otherwise would be unjust to require payment as imposed.

We held that an offender bears the burden "to request and factually demonstrate his eligibility for relief under at least one of the four conditions." *Erickson*, ¶ 17.

¶38 This case comes to the Court on appeal from the restitution order imposed as part of the sentence. Lodahl made no petition to the District Court, she did not mention § 46-18-246, MCA, to the District Court, she did not raise the issue of her ability to pay until the day of the restitution hearing, and the court made no finding whether any alleged circumstances "no longer exist" or would make the ordered restitution "unjust."

¶39 Lodahl also does not cite § 46-18-246, MCA, in her briefing on appeal. The Court, though, relies exclusively on that statute to reverse the District Court for "fail[ing] to appropriately apply [it]." Opinion, ¶¶ 27, 31. Reasoning that the statute permits a court to adjust or waive payment "at any time," it posits that Lodahl raised the issue of waiver adequately through her testimony at the restitution hearing and that requiring a formal petition is "overly formulistic" and would "unnecessarily elevate[] form over substance." Opinion, ¶¶ 26, 28. The Court speculates that the sentencing court and the parties essentially assumed the application of the -246 criteria. It first contends that "the very basis for scheduling a separate restitution hearing" was to consider Lodahl's ability to pay because defense counsel explicitly stated there was no dispute regarding the restitution amount. Opinion, ¶ 26. But the record plainly demonstrates that Lodahl requested the restitution hearing to argue that the MSF did not qualify as a victim entitled to restitution.

22

Lodahl did not raise her ability to pay until the hearing and then did not invoke § 46-18-246, MCA. The Court next reasons that the victim had an opportunity to be heard at the restitution hearing. Opinion, ¶ 26. But the District Court did not provide the victim with notice that Lodahl was seeking waiver of the requirement to make payments, as § 46-18-246, MCA, mandates, the victim was not given prior notice of Lodahl's ability-to-pay argument, and her testimony was not in response to such an argument.

¶40 The Court concludes nonetheless that Lodahl effectively raised the request orally in open court consistent with what it supposes is "the custom and practice in the judicial district." Opinion, ¶ 26. It contends that the court's and the parties' mutual understanding of this custom and Lodahl's challenge under § 46-18-246, MCA, are demonstrated by the fact that the State made no objection for insufficiency or relevance. Opinion, ¶ 26. But whatever the "custom and practice"—which is not demonstrated by the record—the District Court did not make an error of law when it applied the restitution statutes as written. "We construe statutes according to the plain meaning of their language." *See Comm'r of Political Practices for Mont. v. Mont. Republican Party*, 2021 MT 99, ¶ 7, 404 Mont. 80, 485 P.3d 741 (internal quotation marks and citations omitted). "Different language is to be given different construction." *Zinvest, LLC v. Gunnersfield Enters.*, 2017 MT 284, ¶ 26, 389 Mont. 334, 405 P.3d 1270 (quoting *Gregg v. Whitefish City Council*, 2004 MT 262, ¶ 38, 323 Mont. 109, 99 P.3d 151); *see also Comm'r of Political Practices for Mont.*, ¶ 10. The statute requires a petition, notice of the same, and

23

a hearing. The Court is not free to disregard these requirements simply because it thinks another process would be more efficient.

¶41 Finally, the Court speculates that:

> requiring restitution as a condition of probation when an offender is unable to pay for it, runs the risk of the court extending the term of probation—subjecting the offender to extended probationary conditions and supervision costs—beyond that which would otherwise be imposed, merely to provide the offender more time to pay restitution due to nothing more than indigence.

Opinion, ¶ 27 n.6. We have explicitly prohibited such action. *State v. Pritchett*, 2000 MT 261, ¶¶ 26-30, 37, 302 Mont. 1, 11 P.3d 539 (holding that sentencing courts may not extend an offender's sentence for failure to pay or a perceived need for more time to pay full restitution).

¶42 I am concerned about the Court's willingness to decide the case on the basis of its *sua sponte* consideration of a statute that neither party raises on appeal. We strive to avoid considering new legal theories for the first time on appeal or taking up issues *sua sponte*. *See Pilgeram v. GreenPoint Mortg. Finding, Inc.*, 2013 MT 354, ¶ 20, 373 Mont. 1, 313 P.3d 839 (citations omitted); *Pinnow v. Mont. State Fund*, 2007 MT 332, ¶¶ 15-16, 340 Mont. 217, 172 P.3d 1273 (citations omitted) (where we held it was necessary to address the question of jurisdiction *sua sponte* because it "involves the fundamental power and authority of a court to hear and decide an issue," thereby "transcend[ing] procedural considerations"). The Court's concern that Lodahl's undisputed circumstances "support waiver of the restitution [payments] as unjust" is not ground to reverse the amount imposed. Opinion, ¶ 27. She may seek waiver through the statutory petition process. It is

unnecessary and unwise to depart from our regular practice of considering only those arguments properly raised before the trial court and on appeal.

¶43 Section 46-18-246, MCA, provides Lodahl an avenue to seek relief from her monthly restitution obligation "at any time" from the District Court. I would affirm the District Court's ruling and recognize her ability to do so.

/S/ BETH BAKER

Justice Jim Rice joins in the Concurrence and Dissent of Justice Baker.

/S/ JIM RICE

Justice Jim Rice, concurring in part and dissenting in part.

¶44 I join Justice Baker's dissent and write to raise additional concerns about Issue 2. The Court simply runs over the statutes without discussing their specific requirements, and then legislates its own preferable restitution process that requires what is impossible under the statutes.

¶45 The Court gives a general characterization to the restitution statutes as including "limiting, waiving, and adjusting" provisions and, without analysis, concludes these statutes must be "applied together." Opinion, ¶¶ 23, 24. This "applying together" approach both ignores and contradicts express statutory provisions, and the Court justifies its conclusion by repeated reference to "the custom and practice" followed in judicial districts, especially "very busy" ones. Opinion, ¶¶ 26, 26 n.2. "Custom and practice" is a novel

canon of statutory construction, to say the least, but the Court applies it here to reintroduce ability-to-pay issues to the sentencing process that the Legislature specifically excluded, and cites no appropriate legal authority.

¶46 In 2003, the Legislature eliminated from sentencing, by striking prior statutory language, any consideration of "the financial resources and future ability of the offender to pay[,]" "the method and time of payment[,]" and payment "in installments" regarding restitution. 2003 Montana Laws ch. 272, § 6. In replacement of this language, the Legislature provided that consideration of restitution at sentencing would include "the determination of the amount of restitution," at which "the offender may assert any defense that the offender could raise in a civil action for the loss for which the victim seeks compensation." 2003 Montana Laws ch. 272, § 6. The revised statute thus allows no consideration during sentencing of the "limiting, waiving, and adjusting" of restitution that the Court inserts today. Opinion, ¶ 24. Further, the Court's new restitution process is broadly inconsistent with the numerous statutes conveying the Legislature's clear intent that restitution be fully determined and imposed during sentencing.

¶47 Justice Baker is exactly right that § 46-18-246, MCA, the restitution waiver statute, was enacted as, and intended to be, part of a "sequential process." *Baker Dissent*, ¶ 4. When first enacted in 1983, this provision was placed, not only after the restitution sentencing provisions, but after the provision granting authority to the sentencing court to order a probation or restitution officer "to supervise the making of restitution and to report to the court any default in payment." 1983 Montana Laws, ch. 426, § 5. After providing

26

sentencing provisions in § 4, and supervision provisions in § 5, the law then stated in § 6 that an offender "may at any time petition the sentencing court to adjust or otherwise waive payment of any part *of any ordered restitution*[,]" that is, restitution previously ordered during sentencing. 1983 Montana Laws, ch. 426, § 6 (emphasis added); *see also* § 46-18-246, MCA. Under these provisions, the necessary meaning of the term "at any time" is any time after the restitution process has been completed, restitution ordered, a judgment entered by the sentencing court, and the defendant's sentence commenced. Continuing, the provision stated, as it still does today, that waiver of the restitution requirement was authorized "[i]f the court finds that the circumstances upon which it based the imposition of restitution . . . *no longer exist* or that it otherwise would be unjust to require payment *as imposed*[.]" Section 46-18-246, MCA (emphasis added). Consequently, what the Court orders today is <u>impossible</u> under the statutes: clearly, there cannot be a determination that "the circumstances upon which [the District Court] based the imposition of restitution . . . no longer exist" during the original restitution hearing, before a judgment of restitution has even been entered. Section 46-18-246, MCA. Under the statutes, and consistent with the 2003 legislative revisions, waiver of restitution is strictly a post-judgment inquiry undertaken by the sentencing court in a subsequent proceeding, which assesses the change in circumstances since the judgment was entered. As we explained in *State v. Brownback*, 2010 MT 96, ¶ 28, n.2, 356 Mont. 190, 232 P.3d 385, the waiver process is initiated by a "subsequent petition."

27

¶48 The Court's opinion on this issue is not legal analysis. It does not consider the statutory text, the structure of the statutes, or any legislative history, but instead waves off any consideration of these interpretational requisites by an unsupportable resort to "apply[ing] together" the statutes, as if "apply[ing] together" was a license to ignore the canons of statutory construction and rewrite the statutes. Opinion, ¶ 24. There is no ambiguity in the subject statutes that needs to be resolved by applying them together. And, in any event, if an ambiguity did exist, we would first turn to legislative history. *See Christenot v. State*, 272 Mont. 396, 401, 901 P.2d 545, 548 (1996) (stating that "[w]hen legislative intent cannot be determined from the plain words of a statute, then the court must examine the legislative history of the statute"). Here, the meaning of the statutes is clear, and they should be applied as enacted. Instead, the Court dismisses the statutes in favor of a fanciful flight into policymaking disconnected from the restrictions of the law and based upon the Court's own, non-record, perceptions. I understand that the Court may be desirous of promoting relief from restitution requirements for defendants qualifying for waiver, but it should not pursue this goal by enacting its own process that contradicts the process enacted by the Legislature and thus undermines legislative intent.

¶49 Justice Baker well explains how the Court addresses an issue not raised as required by statute. Baker Concurrence and Dissent, ¶¶ 47-49. The Court then decides the merits of the waiver issue it has improperly raised *sua sponte* by employing speculation (Lodahl's mental health problems "likely played at least some role in her offense") and citing its own view of the evidence in a second guessing of the sentencing court to reach its condemnatory

28

conclusion that the District Court's findings of fact are, not clearly erroneous, but "absurd." Opinion, ¶ 27. Absurd based on what? Not the record, but upon Court's own speculations undertaken after first chucking the law.

¶50    I dissent from Issue 2.

/S/ JIM RICE

Justice James Jeremiah Shea, concurring in part and dissenting in part.

¶51    I agree with the majority's conclusion that the plain language of § 46-18-246, MCA, allows a defendant to petition the District Court for adjustment or waiver of restitution "at any time," which may include seeking consideration of such a petition at the sentencing hearing after restitution has been ordered. I nevertheless would affirm the District Court on Issue 2 because Lodahl did not petition the District Court for such relief.

¶52    The majority concludes that Lodahl "in essence" petitioned the District Court for waiver or adjustment of her ordered restitution as unjust under her particular circumstances pursuant to § 46-18-246, MCA. Opinion, ¶ 24. Whether or not this is a fair interpretation of what transpired at the sentencing hearing, there can be no dispute that Lodahl did not *actually* petition the District Court for waiver or adjustment of her restitution pursuant to § 46-18-246, MCA. As Justice Baker correctly points out, Lodahl never cited, much less relied upon, § 46-18-246, MCA, either in her arguments to the District Court or on appeal. Baker Concurrence and Dissent, ¶¶ 38-39. We have consistently held that we will not hold a district court in error when it has not been given an opportunity to correct itself.

29

*State v. English*, 2006 MT 177, ¶ 71, 333 Mont. 23, 140 P.3d 454. In this case, there was nothing for the District Court to correct since its only ostensible error was not recognizing that Lodahl was seeking waiver of restitution pursuant to a statute that she did not cite.

¶53 The majority presents a compelling case for waiving Lodahl's restitution obligation under § 46-18-246, MCA. I submit the District Court should have been afforded the opportunity to consider it. For that reason, I dissent as to the majority's resolution of Issue 2.

/S/ JAMES JEREMIAH SHEA